IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LARRY CIRKSENA,<br><br>    Plaintiff,<br><br>vs.<br><br>FARMERS COOPERATIVE COMPANY; DANIEL SCOTT FOREY, Individually and in his official capacity as General Manager, and JAMES EDWARD HAWKINS, Individually and in his official capacity as Department Manager,<br><br>    Defendants. | No. C05-2009<br><br>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RELEVANT PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . 2

III. LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . 3

IV. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. INDIVIDUAL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI. AGE DISCRIMINATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A. *Plaintiff's Prima Facie Case* . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1. *Elment Three: Meeting Defendant's Reasonable Expectations* . . 7
        2. *Element Four: Replaced By Younger Employee* . . . . . . . . . . 8
    B. *Defendant's Legitimate Nondiscriminatory Reason* . . . . . . . . . . . . 9
    C. *Pretext* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1. *Fact issue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2. *Reasonable inference* . . . . . . . . . . . . . . . . . . . . . . . . 14

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

On the 13th day of April, 2007, this matter came on for telephonic hearing on the Motion for Summary Judgment (docket number 21) filed by Defendants on February 5, 2007. Plaintiff appeared by his attorney, Blake Parker. Defendants appeared by their attorney, Max E. Kirk. The Court, having reviewed the pleadings, the applicable law, and considered the arguments of counsel, enters the following ruling.

## II. RELEVANT PRIOR PROCEEDINGS

On April 30, 2004, Plaintiff timely filed charges of employment discrimination with the Iowa Civil Rights Commission. Plaintiff's charges were also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On August 12, 2004, the Iowa Civil Rights Commission issued an administrative release (right-to-sue letter) to Plaintiff with respect to his charges of discrimination pursuant to Iowa Code section 216.16. The EEOC issued a right-to-sue letter to Plaintiff on September 2, 2004.

On November 10, 2004, having exhausted his administrative remedies, Plaintiff filed a Petition at Law in the Iowa District Court for Grundy County (Case No. LACV057759). Plaintiff alleged Defendants discriminated against him by discharging him from employment on the basis of his age, in violation of the Iowa Civil Rights Act, Iowa Code section 216 (Count I) and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, *et seq.* (Count II).

Defendants filed a Notice of Removal to the United States District Court for the Northern District of Iowa, Cedar Rapids Division, on January 18, 2005. On May 10, 2005, both parties consented to proceed before a United States Magistrate Judge pursuant to the provisions set forth in 28 U.S.C. § 636(c). On February 5, 2007, Defendants filed the instant Motion for Summary Judgment. On March 15, 2007, Plaintiff filed a Resistance.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. FACTUAL BACKGROUND

Plaintiff was hired by Defendant Farmers Cooperative Company ("Farmers") in April 1988. Plaintiff worked as a feed truck driver and delivered prepared feed to various customers for Farmers. Plaintiff was terminated from employment on January 9, 2004. Plaintiff was informed that he was terminated during a meeting with Defendant Daniel Forey ("Forey"), Farmers' general manager, and Defendant James Hawkins ("Hawkins"), feed department manager.

Farmers provided the following reasons for discharging Plaintiff: (1) Failure to clock out his time card over his lunch hour, (2) customer complaints about Plaintiff remaining at customer sites for long periods of time after the feed was delivered,[1] and (3) being observed in Clarksville, Iowa on December 19, 2003 at a time when he should not have been there.[2] Other factors cited by Defendants for Plaintiff's discharge were his failure to improve his efficiency in making deliveries, failing to account for his departure and arrival times, and unnecessary miles driven on his feed delivery routes.[3]

Plaintiff disputes the reasons provided by Defendants for his discharge. Plaintiff contends that he was discharged because of his age. Plaintiff asserts the following additional facts regarding his discharge: (1) He was only disciplined in compliance with

---

[1] Specifically, the complaints allege Plaintiff would leave his truck sitting idle, for up to an hour at a time, in customer farmyards and behind customer building sites.

[2] On December 19, 2003, at approximately 5:30 p.m., Hawkins observed Plaintiff's truck parked on a side street in Clarksville, Iowa. Clarksville is about 25 to 30 minutes away from Dike, Iowa, where the feed mill Plaintiff worked at is located. Defendants assert that there was no business reason for Plaintiff to be in Clarksville at 5:30 p.m. on December 19, 2003 because Clarksville is not on the way to or from any deliveries he made that day.

[3] Forey testified at his deposition that those issues, improved efficiency and accounting for time and miles while on delivery routes, were brought to Plaintiff's attention in January 2003. Forey further testified that Plaintiff failed to make any improvements in those areas throughout the remainder of 2003, and before he was terminated in January 2004.

Defendants' discipline policy on two occasions, the first in 1995 and the second in 1998;[4] (2) defendants approved approximately 50 time cards where he did not clock out for lunch over the noon hour in 2003; (3) there is no documentation of any warnings given to him in 2002 or 2003 regarding his failure to clock out at noon; (4) other Farmers truck drivers stopped on route to do personal business;[5] (5) other Farmers truck drivers would sometimes work through the noon hour in order to make deliveries on time; and (6) on December 19, 2003, when he was observed in Clarksville, Iowa, Plaintiff claims that he made a delivery which took him through Clarksville, and on his way through town, he may have stopped at a Kwik Trip to purchase a soda or some other snack. Other facts that are significant for making a determination on Defendants' Motion for Summary Judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## V. INDIVIDUAL DEFENDANTS

Defendants argue that Defendant Forey and Defendant Hawkins should be dismissed from the case. Plaintiff concedes that Forey and Hawkins should not be included as parties and should be dismissed. Claims against individual defendants such as Forey and Hawkins

---

[4] Farmers has a written discipline policy provided to every employee. The policy provides a "progressive" approach to discipline, including a First Offense (an informal verbal warning which is documented, with a copy given to the employee), Second Offense (a formal written warning), and Third Offense (a final written warning). Plaintiff was disciplined on February 21, 1995 for an altercation with a co-worker. He also received a letter from Hawkins on December 22, 1998. The purpose of the 1998 letter was to reinforce certain company policies, including: "(1) Clocking out for noon lunch, (2) starting early without notice, (3) making 'other' stops while making feed deliveries, (4) truck maintenance, [and] (5) efficient use of time." The letter stated that failure to comply with those policies could result in Plaintiff's termination from employment. Plaintiff signed the letter to acknowledge that he received it. Defendants did not take any other disciplinary action against Plaintiff during his employment.

[5] Tom Soska, a truck driver for Farmers, testified at his deposition that he regularly stopped at his home for lunch on his way back to the feed mill in Dike, Iowa after making a delivery to the Dietrick Turkey Farm. Aaron Dodd, another truck driver for Farmers, testified at his deposition that he sometimes stopped at convenience stores for food or drink when he was making deliveries. He also testified that during calving season, he would stop at his father's farm to check on the cows if he was making a delivery nearby.

are not allowed in Title VII cases. *See Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998) (The Eighth Circuit has "'squarely held that supervisors may not be held individually liable under Title VII.'" (quoting *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997))). Accordingly, the Court finds that Defendants Forey and Hawkins, Plaintiff's supervisors, may not be held individually liable in this matter. Therefore, Forey and Hawkins will be dismissed as individual defendants from this case.

## *VI. AGE DISCRIMINATION CLAIM*

Under the ADEA, employers are forbidden from taking adverse employment actions against employees based on their age. *See* 29 U.S.C. § 623(a)(1); *Lewis v. St. Cloud State University*, 467 F.3d 1133, 1136 (8th Cir. 2006). Plaintiff presents no direct evidence of intentional age discrimination, but rather bases his claim on circumstantial evidence. Therefore, the Court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973) to Plaintiff's age discrimination claim. *See also Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005) (citing *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806-07 (8th Cir. 2003)). Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff must first establish a prima facie case of discrimination. *Fair v. Norris*, 480 F.3d 865, 869-70 (8th Cir. 2007). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment decision. *Id.* at 870 (citing *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002)). If the employer provides such a reason, then the burden shifts back to the plaintiff to present evidence that the employer's reason was a pretext for intentional discrimination. *Id.*

### *A. Plaintiff's Prima Facie Case*

In order to establish a prima facie case of age discrimination, Plaintiff must show that (1) he was at least forty years old, (2) suffered an adverse employment action, (3) was meeting Defendant's reasonable expectations at the time of his termination, and (4) was replaced by someone substantially younger. *Lewis*, 467 F.3d at 1136 (citing *Haas*, 409

Case 6:05-cv-02009-JSS   Document 30   Filed 05/01/07   Page 6 of 16

6

F.3d at 1035). Defendant[6] does not dispute that Plaintiff meets the first two requirements of his prima facie case. Plaintiff is over forty years old and he was terminated from his employment. However, Defendant contends that Plaintiff fails to meet the final two elements of his prima facie case.

### 1. *Element Three: Meeting Defendant's Reasonable Expectations*

Defendant first argues that Plaintiff did not meet its reasonable expectations because he did not perform his job satisfactorily. Defendant asserts that Plaintiff's work performance was unsatisfactory because he frequently failed to punch out his time card over the lunch hour, failed to fill in his departure and arrival times on his time card for the deliveries he made, customers complained to management about his truck sitting idle on their property for up to an hour or more after deliveries, and he made personal stops off his route on company time.[7] Defendant also contends that Plaintiff was "the subject of many verbal reprimands for job inefficiency and performance" during his employment. Thus, Defendant argues that Plaintiff was not performing his work satisfactorily at the time of his termination. Defendant believes that Plaintiff cannot establish the third element of his prima facie case of age discrimination; and therefore, argues that it is entitled to summary judgment.

Plaintiff argues that his work performance was satisfactory and he met the burden of his prima facie case on this element. According to the Plantiff, the record demonstrates that he worked for the Defendant for 16 years with virtually no disciplinary action taken against him.[8] Furthermore, a comparison of the tons of feed delivered and miles driven

---

[6] Because Forey and Hawkins have been dismissed in this matter, Farmers will be referred to as "Defendant" for the remainder of this ruling.

[7] The allegation that Plaintiff made personal stops on company time refers to Hawkins' observation of Plaintiff's truck in Clarksville, Iowa on December 19, 2003. This incident is discussed in more detail in section IV of this ruling.

[8] Plaintiff's employment records include one written reprimand from 1995 for an altercation between Plaintiff and a co-worker and a letter given to Plaintiff in 1998 by
(continued...)

in 2003 between Plaintiff and Tom Soska (Soska), Defendant's other full-time feed delivery truck driver, shows that they were performing at the same level.[9] Thus, Plaintiff maintains that he has met his burden of making a prima facie case on the element of satisfactory work performance.

The evidentiary burden on a plaintiff to establish a prima facie case is minimal. *Stewart v. Independent School Dist. No. 196*, \_\_\_\_ F.3d \_\_\_\_, 2007 WL 1029327, (8th Cir. 2007) (citing *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005)). Furthermore, "'[t]he prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue' of discriminatory action." *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (quoting *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995)). The court finds that the comparison between Plaintiff and Soska demonstrates, for purposes of his prima facie case, that Plaintiff was meeting the reasonable expectations of Defendant at the time of his termination.

### 2. Element Four: Replaced By Younger Employee

Defendant asserts that since it did not reassign Plaintiff's duties to a specific individual, the fourth element of Plaintiff's prima facie case requires him to show that age played a factor in its decision to terminate him; rather than a showing that he was replaced by a younger worker. Defendant cites *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001); and *Reynolds v. Land O'Lakes, Inc.*, 112 F.3d 358, 361 (8th Cir. 1997) to support its assertion. Defendant's reliance on these cases is misplaced. Those cases, unlike the present case, involved a reduction-in-force fact scenario which required a different fourth element of a prima facie

---

[8](...continued)
Hawkins which provided "reinforcement of certain company policies."

[9] *See* Plaintiff's Appendix included with his Resistance to Defendants' Motion for Summary Judgment (docket number 24) at 18. The comparison chart shows that Plaintiff delivered 12,390 tons of feed and drove 30,650 miles in 2003 and Tom Soska delivered 12,081 tons of feed and drove 22,193 miles in 2003.

case of discrimination.[10] *See Yates*, 267 F.3d at 799 ("[o]rdinarily, replacement by a younger worker is sufficient to establish a prima facie case. However, in recognition that duties have to be redistributed within the remaining workforce after a reduction-in-force, redistribution to a younger person is not circumstantial evidence of discrimination. Instead, in meeting his [or her] burden under the fourth factor, [a plaintiff] must come forward with some additional evidence that age played a role in his [or her] termination."). The Court determines that Plaintiff must only show that he was replaced by a younger employee to establish the fourth element of his prima facie case.

The record provides that Soska (50) was a younger employee who took over some of Plaintiff's responsibilities after he was terminated. Plaintiff also claims that his other duties which Soska did not assume were taken over by younger employees after he was terminated. Defendant does not dispute this claim. Therefore, the Court finds that Plaintiff has met his burden of establishing the fourth element of his prima facie case. *See Stewart*, ___ F.3d at ___, 2007 WL 1029327 (a plaintiff's evidentiary burden for establishing his or her prima facie case is minimal). Having met his burden on all four elements, the Court further finds that Plaintiff has established his prima facie case of age discrimination.

### B. *Defendant's Legitimate Nondiscriminatory Reason*

Because Plaintiff has met his burden of establishing a prima facie case of age discrimination, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for terminating him. *See Fair*, 480 F.3d at 870. Defendant provides the following nondiscriminatory reasons for terminating Plaintiff:

> [He] suffered poor work performance and insubordination, was resistant to correction and considered any form of reprimand with which he did not agree to be a form of

---

[10] In the *Hitt* case, the plaintiff was terminated for fighting. *Hitt*, 356 F.3d at 923. However, approximately 30 days after the plaintiff's termination, the defendant company underwent a reduction-in-force; thus, the fourth element used for determining the plaintiff's prima facie case was in accordance with a reduction-in-force case; rather than the traditional element of replacement by a younger worker. *Id.*

harassment. He failed to punch out for noon hour, as
requested. The result of this is that he would obtain over one-
half hour extra compensation per day, versus his co-employees
who would clock out for at least a half-hour noon hour. He
would take longer on his routes. Management received
complaints from customers. Plaintiff was seen in the city of
Clarksville, Iowa on non-business related matters the evening
of December [19], 2003. This alone would justify Plaintiff's
termination. This event, however, coupled with Plaintiff's
past history provides a very legitimate business reason for his
termination.

(Defendant's Brief at 8) The Court finds that Defendant has offered legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff.

## C. Pretext

Because Defendant articulated legitimate nondiscriminatory reasons for its decision to terminate Plaintiff, the burden shifts back to Plaintiff "to present sufficient evidence to raise a question of material fact as to whether one or more of [Defendant's] proffered reasons is pretext for age discrimination." *Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 854 (8th Cir. 2005) (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736-37 (8th Cir. 2004)). Furthermore, Plaintiff can only avoid summary judgment "'if the evidence considered in its entirety (1) created a fact issue as to whether [Defendant's] proffered reasons are pretextual and (2) created a reasonable inference that age was a determinative factor in the adverse employment decision.'" *Haas*, 409 F.3d at 1035 (quoting *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

### 1. Fact issue

Plaintiff disputes Defendant's legitimate nondiscriminatory reasons for his discharge. Plaintiff asserts that he did not suffer "poor work performance and insubordination." A comparison of the amount of feed delivered and miles driven by Plaintiff and Soska in 2003, shows that Plaintiff delivered 12,390 tons of feed and drove 30,650 miles and Soska delivered 12,081 tons of feed and drove 22,193 miles. Plaintiff maintains that this shows his work performance was equal to a younger driver who retained his job. Plaintiff also argues that there is no documentation in his employment

record which suggests insubordination or poor work performance. Plaintiff's employment record contains a disciplinary action in 1995 for an altercation between Plaintiff and a co-worker. Plaintiff's employment record also contains a "reinforcement" letter given to Plaintiff by Hawkins in 1998. The purpose of this letter was to "reinforce certain company policies," including clocking out over the noon hour, making "other stops" while delivering feed, and efficient use of time. No other disciplinary or corrective actions are contained in Plaintiff's employment record. Hawkins testified at his deposition that he discussed being more efficient with Plaintiff in January, June, and July, 2003. The only documented evidence of these discussions, however, is provided by a letter dated January 28, 2005, written by Hawkins in connection with this litigation, setting forth his recollection of conversations he had with Plaintiff prior to his termination.

Plaintiff further argues that other drivers were not disciplined for not punching out their time cards over the lunch hour. Soska testified at his deposition that while he currently clocks out everyday during the lunch hour, he previously worked through his lunch hour, eating while making deliveries, and therefore did not clock out. Aaron Dodd, a part-time driver who worked with Plaintiff, also testified at his deposition that he would not punch-out during the lunch hour if he was out making deliveries, because he ate his lunch while he was working. Plaintiff provided similar testimony at his deposition. Plaintiff testified that he would not clock-out for lunch if he ate while he was making deliveries.[11] Furthermore, in 2003, every time card that Plaintiff submitted, even ones

---

[11] Plaintiff's deposition testimony provides:

    Q.    When you would work through the noon hour, would you eat? Would you stop somewhere to get something to eat?
    A.    If I did, I might grab something. But, no. I might stop and grab a sandwich, yes.
    Q.    And just eat in the truck?
    A.    Eat on the run.
    Q.    So would you have gone to your home and eat?
    A.    No.
    Q.    Did you ever go to a restaurant and eat?

(continued...)

where he failed to punch-out for lunch, were approved for payment. Moreover, no disciplinary action was taken against Plaintiff in 2003 for failing to punch-out his time card over the noon hour.[12]

Defendant raises the issue of customer complaints as a legitimate nondiscriminatory reason for Plaintiff's discharge. However, the record demonstrates that Defendant did not discuss any of these alleged complaints with Plaintiff or discipline him for any of them. Specifically, Defendant asserts that Kyle Dudden complained about Plaintiff sleeping on the job and spending too long at delivery sites.[13] In his deposition testimony, Forey testified that he observed Plaintiff make a delivery to Dudden in October 2003. According to Forey, he observed Plaintiff's truck sitting idle for about 10 minutes. Forey did not, however, discuss his observations with Plaintiff.

Hawkins testified at his deposition that another customer, Chuck Murphy, mentioned to him that he thought Plaintiff's truck sat on his property longer than necessary to deliver feed. Hawkins did not discuss Murphy's complaint with Plaintiff or discipline him for it.[14] Hawkins also testified that another customer, Jim Badlong, told him he

---

[11](...continued)
  A. If I did, I ordered and would take it and eat it on the run.
  Q. Okay. I want to be very clear with this question. Did you ever stop at a restaurant and have your noon meal and not clock out during the entire time you worked for Farmers Coop?
  A. Not that I'm aware of.
  Q. Did you ever go home and have lunch and not clock out during the entire time you worked for Farmers Coop?
  A. Not that I'm aware of.
(Defendant's Appendix at 82; Cirksena Deposition, p. 82, l. 1-22)

[12] Hawkins' deposition testimony provided:
  Q. Did you reprimand [Plaintiff] for not clocking out at noontime?
  A. No, I didn't.
(Defendant's Appendix at 164; Hawkins Deposition, p. 26, l. 5-7)

[13] Defendants' Answer to Plaintiff's Interrogatories, Interrogatory No. 19.

[14] Hawkins' deposition testimony provides:

(continued...)

witnessed Plaintiff sitting idle in his truck on his property for 15 to 20 minutes more than once. However, Hawkins learned this information from Badlong *after* Plaintiff had been terminated. Hawkins claims that prior to Plaintiff's discharge, he was told by two people, who he can not identify, that Plaintiff was seen sitting idle in his truck at a roadside park and at the Dudden farm. Plaintiff was not disciplined for either of these alleged incidents.

Lastly, Plaintiff notes that Forey and Hawkins did not investigate why he was in Clarksville, Iowa on December 19, 2003. Plaintiff claims that he does not remember stopping in Clarksville, but if he did, it was to purchase a beverage or snack at the Kwik Trip. Defendant did not discuss this incident with Plaintiff before his termination and he was not disciplined for it.

Plaintiff presented the following evidence: (1) His work performance was equal to younger delivery drivers employed by Defendant; (2) his employment record contains no formal or informal disciplinary actions taken against him from 1999 - 2003; (3) other feed delivery drivers employed by Defendant, who were younger than Plaintiff, were not disciplined for failing to punch-out over the noon hour; (4) Defendant approved all of his

---

[14](...continued)
- Q. Okay. Tell me about Mr. Murphy.
- A. Well, he just noticed that [Plaintiff's] truck sat at his yard longer than he thought was necessary after he unloaded the feed.
- Q. And when did that occur and when did you find out about it?
- A. I don't know the date that that occurred. And I believe he told me that some time during 2003.
- Q. Okay. Did you confront [Plaintiff] about the fact that -- I'm assuming this was a customer; correct?
- A. Yes, it was.
- Q. That a customer was complaining that he was spending too long in his yard?
- A. No.
- Q. Did you discipline [Plaintiff] about that fact?
- A. No.
- Q. Did you ask [Plaintiff] as to why he was spending too much time in Mr. Murphy's yard?
- A. No.

(Defendant's Appendix at 171; Hawkins Deposition, pp. 53-53, l. 24-25, 1-20)

time cards in 2003, including the time cards which showed he did not punch-out over the lunch hour; (5) none of the customer complaints directed against Plaintiff were discussed with him and he was not disciplined for any of them; and (6) Defendant did not investigate, discuss with, or discipline Plaintiff for the Clarksville, Iowa incident which occurred on December 19, 2003. The Court finds, based on the foregoing, that Plaintiff has presented sufficient evidence to raise a question of material fact as to whether Defendant's proffered reasons for his discharge were pretext for age discrimination.

### 2. *Reasonable inference*

The Court must now determine whether the evidence presented by Plaintiff creates a reasonable inference that age was a determinative factor in Defendant's decision to terminate him. *See Haas*, 409 F.3d at 1035; *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 810 (8th Cir. 2003) ("Before a court can allow a discrimination case involving only circumstantial evidence to go to a jury, it must find sufficient evidence that would allow a reasonable factfinder to infer that age was a determinative factor in the adverse employment action."). The following factors should be considered when determining whether evidence may give rise to an inference of intentional discrimination:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000). Furthermore, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. In interpreting *Reeves*, the Eighth Circuit has stated:

> [T]he Court made clear that additional, independent evidence of discriminatory animus is not always required to support an inference of discrimination, and that evidence supporting the

14

> plaintiff's prima facie case and exposing as pretextual the employer's reason for an adverse employment action should be considered, along with any other evidence that may exist, in determining whether an inference of discrimination has been raised.

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000); *see also Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003) ("Establishing a prima facie case in addition to presenting evidence of pretext can be, but is not necessarily, sufficient to withstand a motion for summary judgment.").

Plaintiff presents a strong prima facie case. He was sixty-one years old and approximately one month shy of his sixty-second birthday when he was terminated. Furthermore, the record shows that Plaintiff's work performance was equal to his two younger co-workers, aged 50 and 25. Plaintiff also presented strong evidence that Defendant's proffered reasons for terminating him were pretext for age discrimination. The record demonstrates that Plaintiff was treated differently than his younger co-workers. Specifically, Plaintiff's younger co-workers were not terminated or disciplined for not punching-out over the noon hour or for making personal stops on their delivery routes. Plaintiff's employment record shows no informal or formal disciplinary action taken against him in 2003 for anything, including not punching out over the lunch hour or making personal stops while delivering feed. Moreover, both Forey and Hawkins admit in their deposition testimony that they did not discuss the alleged customer complaints or the Clarksville, Iowa incident with Plaintiff prior to his termination. The Court finds that Plaintiff's prima facie case, combined with evidence that Defendant's proffered justification for Plaintiff's termination was pretext, is sufficient to create a reasonable inference that age was a determinative factor in Defendant's decision to terminate Plaintiff.

## VII. CONCLUSION

Because Plaintiff has raised a question of material fact as to whether Defendant's proffered reasons for his termination were pretext for age discrimination, and provided sufficient evidence for a jury to infer that age was a determinative factor in Defendant's

termination decision, the Court concludes that summary judgment is inappropriate. Therefore, Defendant's motion is denied.

## *ORDER*

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The Motion for Summary Judgment (docket number 21) filed by Defendants is **DENIED**.
2. Defendants Daniel Scott Forey and James Edward Hawkins are **DISMISSED** as individual defendants in this case.

**DATED** this 30th day of April, 2007.

JON STUART SCOLES
Magistrate Judge
UNITED STATES DISTRICT COURT